**Donald GAGNE, Administrator of the Estate of James D. Gagne and Arthur and Pauline Gagne, Individually and as Next Friend of Christine Gagne, a Minor Child**

v.

**CITY OF GALVESTON, City of Galveston Police Dept., Jan Coggeshall, Steve Huffman, Mike Putnal.**

Civ. A. No. G–84–192.

United States District Court,
S.D. Texas,
Galveston Division.

Oct. 19, 1987.

## MEMORANDUM OPINION AND ORDER

HUGH GIBSON, District Judge.

Pending before the Court is a motion for summary judgment by the defendants City of Galveston and City of Galveston Police Department. Having considered the pleadings, motions and materials attached thereto, and the law applicable thereto, the Court is of the opinion that defendants motion for summary judgment on plaintiffs 42 U.S.C. § 1983 causes of action should be and hereby is GRANTED.

## FACTS

On May 17, 1983, at approximately 3:00 a.m., James Gagne was arrested for public intoxication by Sgt. Rice and Officer Putnal, two uniformed City of Galveston police officers. Gagne was then transported to the Galveston City Jail and booked at approximately 3:10 a.m. During the booking process, Officer Putnal inadvertently violated departmental policy by not removing Gagne's belt. Additionally, no determination was made to establish the suicidal tendencies, if any, of Gagne, nor was such a determination required by departmental policy. Sometime around 5:00 a.m., Mr. Gagne hanged himself in his cell.[1] Subsequently, the plaintiffs filed a complaint in this Court under 42 U.S.C. § 1983.[2] The original defendants were the City of Galveston, City of Galveston Police Department, Council Member Jan Coggeshall, City Manager Steve Huffman, and Officer Mike Putnal.[3]

## SUMMARY JUDGMENT MOTION

Plaintiffs assert that the City[4] violated Gagne's civil rights in failing to take appropriate precautions to identify him as a sui-

---

1. Gagne was last seen alive at 4:30 a.m. His body was not discovered until 6:45 a.m.

2. Section 1983 provides:
   Every person who under color of any statute, ordinance, regulation, custom or usage of any State or Territory or the District of Columbia, subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.
   42 U.S.C. § 1983. Section 1983 is not itself a jurisdictional statute, but instead merely creates a cause of action. *Hanson v. Town of Flower Mound,* 679 F.2d 497, 504 n. 12 (5th Cir.1982).

3. The City of Galveston and the City of Galveston Police Department are the last two defendants remaining in this action. Council Member Jan Coggeshall was granted a summary judgment on the ground that she was entitled to legislative immunity for her alleged failure to propose a policy on jail suicide. Transcript record no. 42 (citing *Burris v. Willis I.S.D.,* 537 F.Supp. 801 (S.D.Tx.1982), *aff'd in part, rev'd on another ground,* 713 F.2d 1087 (5th Cir.1983)).

   City Manager Steve Huffman was likewise granted a summary judgment. His failure to implement any suicide screening procedures did not violate "clearly established" constitutional rights of which a reasonable person should have known. Transcript record 42 (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)).

   Officer James Putnal was dismissed on the ground of qualified immunity. *Gagne v. City of Galveston,* 805 F.2d 558, 559–60 (5th Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 3266, 97 L.Ed.2d 764 (1987).

4. The term "City" is used to mean both the City of Galveston and the City of Galveston Police Department.

cidal person and protect him from himself.[5] More specifically, the plaintiffs believe the defendants were negligent in failing to remove Gagne's belt, failing to properly screen for suicidal tendencies, failing to provide continued visual observation, failing to promulgate a safety policy, and failing to properly train and fund the police officers and jail personnel. The City readily admits that Officer Putnal's failure to remove Gagne's belt was a producing cause of death, but that the plaintiffs have failed to meet the threshold requirements for a section 1983 cause of action and now move for summary judgment.

In the past, the United States Supreme Court took a fairly harsh view toward motions for summary judgment.[6] However, a recent trilogy of 1986 cases[7] indicates the Supreme Court has clearly had a change of perspective. In broad language which supports the granting of summary judgments, the Supreme Court stated "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, ——, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265, 276 (1986).

The appropriate starting point for engaging in summary judgment analysis is whether "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). An examination of the substantive issues is required only to the extent necessary to determine whether a disputed fact or inference is material to an essential legal element of the case. *See*

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, ——, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 211 (1986). As the moving party in this case, the defendants bear the burden of demonstrating that there are no actual disputes as to any material facts.[8] Alternatively, the defendants can meet their burden simply by showing there is an absence of evidence to support the legal elements of the plaintiffs' case. *Celotex*, 477 U.S. at ——, 106 S.Ct. at 2554, 91 L.Ed.2d at 275; *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195 (5th Cir.1986). Under *Celotex* analysis, once this burden has been met, the plaintiffs must set forth specific facts in support of those allegations that are essential to their case and on which they will bear the burden of proof at the time of trial. *Celotex*, 477 U.S. at ——, 106 S.Ct. at 2552–53, 91 L.Ed.2d at 273. If the plaintiffs fail in their burden, then the granting of summary judgment is not only appropriate, but mandatory. *Celotex*, 477 U.S. at ——, 106 S.Ct. at 2552–53, 91 L.Ed.2d at 273.

Therefore, for the reasons set forth below, this Court finds that the defendants have met their burden of proof by demonstrating that there is no dispute as to any material fact. Furthermore, this Court finds that the plaintiffs have failed to offer specific evidence which establishes genuine issues of fact concerning all the legal elements of a civil rights cause of action.

## CIVIL RIGHTS § 1983 CLAIM

■ In order to assert a section 1983 claim against a municipality, the plaintiffs must satisfy three threshold requirements. First, they must allege a deprivation of

---

5. The plaintiffs have not cited any case law suggesting that there is a *clearly established* constitutional duty to protect pretrial detainees from self-destructive behavior. "Indeed, the case of *Partridge v. Two Unknown Police Officers*, 791 F.2d 1182 (5th Cir.1986), shows that the possible existence and scope of such a duty has only very recently begun to attract attention in this circuit." *Gagne*, 805 F.2d at 560.

6. Childress, *A New Era for Summary Judgments: Recent Shifts at the Supreme Court*, 4 Fifth Cir. Rep. 461, 461 (June 1987). *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1197 (5th Cir.1986).

7. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

8. *Celotex*, 477 U.S. at ——, 106 S.Ct. at 2552, 91 L.Ed.2d at 273; Fed.R.Civ.P. 56(c). This is the traditional summary judgment burden.

rights protected by the Constitution or federal laws. *Williams v. Kelley,* 624 F.2d 695, 697 (5th Cir.1980), *cert. denied,* 451 U.S. 1019, 101 S.Ct. 3009, 69 L.Ed.2d 391 (1981). Second, they must allege that the deprivation was inflicted pursuant to official policy. *Webster v. City of Houston,* 735 F.2d 838, 841 (5th Cir.), *aff'd in part, rev'd on other grounds, per curiam,* 739 F.2d 993 (5th Cir.1984). Third, the allegations must state specific facts and not merely conclusory allegations. *Palmer v. City of San Antonio,* 810 F.2d 514, 516 (5th Cir.1987); *Jacquez v. Procunier,* 801 F.2d 789, 793 (5th Cir.1986).

■ As for the first requirement, the City clearly owed a duty of care to protect Gagne and all other pretrial detainees. *Partridge v. Two Unknown Police Officers,* 791 F.2d 1182, 1186–87 (5th Cir.1986). Yet, that duty of care was not of a constitutional level. The failure to remove a belt and the failure to implement a screening process that was "suicide specific" was nothing more than mere negligence, and mere negligence is insufficient to establish a constitutional deprivation. *Daniels v. Williams,* 474 U.S. 327, 328, 106 S.Ct. 662, 663, 88 L.Ed.2d 662, 666 (1986); *Davidson v. Cannon,* 474 U.S. 344, 346, 106 S.Ct. 668, 670, 88 L.Ed.2d 677, 682 (1986). Moreover, it would be a perverse distortion of the law to establish constitutional liability for every mere breach of a departmental policy. *See Gagne,* 805 F.2d at 560 n. 2.

In light of this fact, the plaintiffs wish to amend their complaint a third time so as to assert that the City's conduct reflects deliberate indifference to Gagne's suicidal tendencies and medical needs, and by analogy thereby establish a section 1983 claim under *Estelle v. Gamble* [9] and its progeny. The plaintiffs then suggest three cases that show deliberate indifference to medical needs in circumstances less compelling than in this case: *Miranda v. Munoz* [10], *Robinson v. Moreland,* [11] and *Guglielmoni v. Alexander.* [12] Plaintiffs cases, however, can be distinguished from the case at bar in that the key factor in any medical denial case is the issue of detection or recognition of the problem. In *Miranda, Robinson,* and *Guglielmoni,* the authorities already recognized, or there was a strong indicia of information for them to recognize, that the pretrial detainee had a serious medical problem requiring special attention.[13]

---

**9.** 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). *Estelle* holds that deliberate indifference to the serious medical needs of a convicted prisoner violates the Eighth Amendment's proscription that a convicted prisoner has the right to be free from cruel and unusual punishment. *Estelle,* 429 U.S. at 104, 97 S.Ct. at 291, 50 L.Ed.2d at 260. Since there was no formal adjudication of guilt against Gagne at the time he allegedly required medical attention, the Eighth Amendment has no application. *City of Revere v. Massachusetts Gen. Hosp.,* 463 U.S. 239, 244, 103 S.Ct. 2979, 2983, 77 L.Ed.2d 605, 611 (1983).

Nonetheless, Gagne was still entitled to at least the level of medical care set forth in *Estelle* in that the Fourteenth Amendment provides pretrial detainees with "due process rights ... at least as great as the Eighth Amendment protections available to a convicted prisoner." *Partridge,* 791 F.2d at 1186–87 (quoting *City of Revere,* 463 U.S. at 244, 103 S.Ct. at 2983, 77 L.Ed.2d at 611). *See also, Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979).

**10.** 770 F.2d 255 (1st Cir.1985).

**11.** 655 F.2d 887 (8th Cir.1981).

**12.** 583 F.Supp. 821 (D.Conn.1984).

**13.** In *Miranda,* the defendants ignored numerous warnings by the decedent's attorney and mother that the decedent was epileptic. The defendants prescribed two types of medication other than the phenobarbital the decedent had been taking. Thereafter, the decedent suffered several seizures. It took a court order before the decedent was transferred to a medical facility. By the time appropriate treatment commenced, the decedent was unable to respond and died. *Miranda,* 770 F.2d at 257–59.

In *Robinson,* an inmate advised the defendant, a shift supervisor, that he had a broken hand. Rather than follow jail regulations and send the inmate to the hospital, or at the very minimum request advice from an on-duty nurse at the hospital, the defendant only gave the inmate ice packs. The inmate went without medical attention for two days. *Robinson,* 655 F.2d at 889–90.

In *Guglielmoni,* the decedent attempted to hang himself on three different occasions. The first time he used a shoe lace which he attached to his cell light fixture. On the second attempt, the decedent used a torn bedsheet. The prison psychiatrist who had treated the decedent for several years concluded the attempts were merely measures designed at securing a transfer. Four days after the second attempt, the decedent suc-

In this case, the City was without knowledge of Gagne's prior suicide attempt. Nor would a reasonable inspection of Gagne's wrist have revealed sufficient scar tissue to put the City on constructive notice of Gagne's suicidal tendencies.[14] Additionally, Gagne stood quietly during the booking process. He did not engage in any bizarre behavior.[15] In the absence of some sort of behavior that would impute notice of a medical problem, the City cannot be said to have been deliberately indifferent to Gagne's medical needs.[16] Thus, the plaintiffs have failed to establish a constitutional deprivation.

■ The second major requirement for establishing municipal liability under section 1983 is to show the constitutional deprivation, if any, was inflicted pursuant to official policy. *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir.1984). Official policy is:

1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or

2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority. Actions of officers or employees of a municipality do not render the municipality liable under § 1983 unless they execute official policy as above defined.

*Id.* at 841. It is ironic, however, that even though official policy is an integral prong of a municipal liability claim, the thrust of the plaintiffs' second amended complaint is that the City was deficient in establishing certain official policies, customs, or practices. More specifically, plaintiffs claim there were no departmental rules or regulations for screening suicidal persons, nor were there any rules for regular and continued visual observation.[17] If such is the case, then the plaintiffs have failed to meet the second requirement of a section 1983 claim.

---

cessfully hanged himself using a shoe lace. *Guglielmoni*, 583 F.Supp. at 824–25.

**14.** Apparently, Mr. Gagne had some very faint scar tissue on *one* wrist. The coroner, Dr. Korndorffer, noted in his deposition that the scar tissue was so faint that he had trouble casting a shadow upon it so he could take a picture of it. In fact, the tissue was so poorly defined that it would have gone unnoticed on a casual inspection. Deposition of Dr. Korndorffer at 15, *Gagne v. City of Galveston*, No. 84–192 (S.D.Tx.1984). The coroner further stated the cuts could have been due to many things, including surgery or an accident. *Id.* at 14.

**15.** An excellent case where a pretrial detainee's bizarre behavior put the police on notice of a serious medical problem is *Partridge*. 791 F.2d 1182. In *Partridge*, the decedent was arrested on suspicion of burglary and theft. When put into the patrol car, the decedent attempted to kick-out the doors and windows of the patrol car. He also intentionally struck his head against the plexiglass divider while being driven to the jail. The detainee's father even told the police officers that his son had mental problems. Furthermore, a notation of health and

mental problems was noted in the city's records. *Id.* at 1184.

**16.** *State Bank of St. Charles v. Camic*, 712 F.2d 1140, 1147 (7th Cir.), *cert. denied*, 464 U.S. 995, 104 S.Ct. 491, 78 L.Ed.2d 686 (1983). The pretrial detainee's behavior must be such to indicate a suicidal problem. Violent behavior by itself is not "synonymous with having reason to know that the violence *might* become self-directed." *Id.* at 1146 (emphasis added).

**17.** In light of the numerous instances of suicide by hanging that occur on a national basis, it would seem that heightened observation is not the answer to suicide prevention. The reason is simple in that unconsciousness and death occur in a matter of minutes.

In those situations where the police have actual or constructive knowledge that the pretrial detainee might be suicidal, the better alternative appears to be to restrict the detainee's access to things like belts and shoelaces, which can be used to facilitate the hanging. Furthermore, the detainee may have to be confined to a straight-jacket in order to prevent him from harming himself.

In the alternative, it might be possible to construe the defendants' conduct as an official policy not to promulgate such rules and regulations so that they can indirectly sanction the denial of medical care to pretrial detainees. In order to presume such a hypothesis, the plaintiffs must specify or allege prior incidents where such conduct resulted in injury to other pretrial detainees. The reason for such specificity is simple. Absent persistent and widespread denial of medical attention to other pretrial detainees, an isolated incident, as exists here, is insufficient to show that a custom exists. *Palmer*, 810 F.2d at 516; *Ramie v. City of Hedwig Village*, 765 F.2d 490, 494 (5th Cir.1985), *cert. denied*, 474 U.S. 1062, 106 S.Ct. 809, 88 L.Ed.2d 784 (1986); *Berry v. McLemore*, 670 F.2d 30, 32 (5th Cir. 1982).

The only valid allegations by plaintiffs that might establish official policy are the allegations of inadequate training, inadequate funding, and ratification of prior conduct. Their allegations of inadequate training, however, are without support because a policy or custom must be "the moving force of the constitutional violation." *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611, 638 (1978). Ordinarily, inadequate training alone is not the moving force of injury because the employee who causes the injury "does not rely upon his inadequate training as tacit approval of his conduct." *Palmer*, 810 F.2d at 516 (quoting *Grandstaff v. City of Borger*, 767 F.2d 161, 169 (5th Cir.1985), *cert. denied*, — U.S. —, 107 S.Ct. 1369, 94 L.Ed.2d 686 (1987).

Moreover, since police officers are trained in groups, if Officer Putnal was inadequately trained, then other officers in his cadet class would be inadequately trained as well. Yet, there are absolutely no facts to show widespread and serious incompetence within the police force. All that has been shown is the one isolated incident that Officer Putnal failed to follow departmental procedure in removing a pretrial detainee's belt. Therefore, the absence of a pattern of similar incidents dictates that the City cannot be liable under section 1983 for inadequate training. *Palmer*, 810 F.2d at 516; *Languirand v. Hayden*, 717 F.2d 220, 227–28 (5th Cir. 1983), *cert. denied*, 467 U.S. 1215, 104 S.Ct. 2656, 81 L.Ed.2d 363 (1984).

■ Nor can plaintiffs general and conclusory allegations of inadequate funding and inadequate staffing support a section 1983 action against the City. Mere understaffing, without more, is not proof of an official policy. *Anderson v. City of Atlanta*, 778 F.2d 678, 687 (11th Cir.1985). It would become so only if more complete funding and staffing were possible, and that it was the deliberate intent of the policy making official not to adequately fund and staff the jail, having in mind a gross indifference to the medical needs of pretrial detainees. *Id.* at 687.

■ Finally, plaintiffs allegations that the City's failure to take corrective action established official policy through ratification is groundless. This argument is without merit in that then Police Chief Eddie Barr took immediate action after Gagne's death. He disciplined Officer Putnal [18] and required more frequent cell inspections.[19] Additionally, more elaborate screening and suicide prevention measures were adopted in 1985.[20] Yet, even if the Court were to presume the City had done nothing, there is still an absence of facts showing that the failure to take corrective action was persistent and widespread. Such an absence reflects that the allegation of ratification is nothing more than a claim of negligence by omission. Such culpability, if any, will not rise to the level of a

---

18. Deposition of Eddie Barr at 30, *Gagne,* No. 84–192.

19. Defendants Brief in Support of the Motion for Summary Judgment at 25, *Gagne,* No. 84–192.

20. *Id.*

constitutional deprivation where the injury is an isolated incident. Isolated incidents are not sufficient to establish official policy through ratification. *See Ramie,* 765 F.2d at 494. Plaintiffs, therefore, fail to meet the official policy requirement of their section 1983 claim.

The third requirement for establishing a section 1983 claim is that the allegations must be supported by specific facts and not merely conclusory allegations. *Palmer,* 810 F.2d at 516; *Jacquez,* 801 F.2d at 793. The plaintiffs second amended complaint fails in this regard.

For example, plaintiffs allege the defendants breached various constitutional and statutory duties to the decedent. Yet, the plaintiffs never cite any specific constitutional or statutory provisions to support their allegations.[21] Plaintiffs also make general allegations that the City violated Texas policies concerning screening procedures and heightened observation.[22] They further alleged the City endorsed inadequate internal mechanisms which would not disclose the type of problems made the basis of this suit. Plaintiffs, however, do not discuss what those inadequate internal mechanisms might be. Then there is the mere six-word sentence alleging silence constitutes ratification. The plaintiffs are strong on allegations, but short on facts. Moreover, the plaintiffs must likewise feel their complaint is insufficient. On the same day that they filed their brief in opposition to defendants motion for summary judgment, plaintiffs moved to file their third amended complaint so that they can now assert that the negligent acts of the police department amounted to deliberate indifference.[23] Clearly, the plaintiffs desire to amend is nothing more than an attempt to avoid summary judgment.

■ At some point in time, this Court must decide whether the plaintiffs have had a fair opportunity to make their case. *Jacquez,* 801 F.2d at 792. The Court cannot continue to allow the plaintiffs to amend their pleading in a three-year old case "until they stumble upon a formula that carries them over the threshold." *Id.* at 792. Additionally, even if this Court permitted the amendment so that the plaintiffs could liberally sprinkle the proper buzz words to set forth stronger conclusory allegations, the amendment would be insufficient to lift this negligence action to the level of a constitutional tort. *Jacquez,* 801 F.2d at 793. Therefore, this Court can only conclude that plaintiffs have pleaded their best case. *Id.* at 792. Despite the harsh nature of the result, plaintiffs must come to realize that not every unfortunate incident constitutes a constitutional deprivation, nor reflects official policy, nor is compensable. *See Languirand,* 717 F.2d at 229.

## CONCLUSION

In light of the Supreme Court's recent trilogy of 1986 cases on summary judgment, and the recent case law on civil rights, this Court concludes that the defendants motion for summary judgment should be granted. The defendants have supported their motion with evidence which shows an absence of genuine issues of fact concerning the legal elements of municipal liability under section 1983. Under Fed.R. Civ.P. 56(e), the burden then shifts to the plaintiffs to set forth specific facts to rebut the evidence supporting the defendants mo-

---

**21.** The plaintiffs do cite TEX.PENAL CODE ANN. § 42.08 (Vernon 1984) for the purpose of defining intoxication. Yet, there are no relevant citations to the Constitution or any statute that would satisfy the requirements of a section 1983 claim.

**22.** Even if the plaintiffs were to have specifically referenced the well settled Texas policies to which they cryptically allude, such policies or standards do not per se establish federal consti-

tutional standards. *See Balli v. Haynes,* 804 F.2d 306, 308 (5th Cir.1986).

**23.** The allegation of deliberate indifference is required in order for Gagne to be entitled to the protection of the Fourteenth Amendment and the level of medical care enunciated in *Estelle. See supra* note 9 and accompanying text. Moreover, such an allegation is required to establish the "kind of arbitrariness and abuse of power that is presumed as a component of the due

tion.[24] The plaintiffs have failed in this regard. There are no specific facts which would establish a constitutional deprivation. Nor are there specific facts to establish that the arresting officer's conduct was done pursuant to official policy. For those reasons, the Court enters summary judgment in favor of the defendants, dismissing with prejudice the plaintiffs section 1983 claims.

### PENDENT STATE CLAIMS

In addition to the federal civil rights claim, the Plaintiffs have also alleged three pendent state claims.[25] While this Court has discretion to exercise pendent jurisdiction over these claims, this Court is of the opinion that dismissal of the state claims is proper pursuant to *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). As stated in *Gibbs*, "if the federal claims are dismissed before trial ... the state claims should be dismissed as well." 383 U.S. at 726, 86 S.Ct. at 1139, 16 L.Ed.2d at 228. Therefore, pursuant to the principles set forth in *Gibbs*, this Court dismisses the plaintiffs state claims without prejudice.

### ORDER

For all of the above reasons it is ORDERED, ADJUDGED, and DECREED that a summary judgment be GRANTED in favor of the defendants, DISMISSING WITH PREJUDICE the plaintiffs section 1983 causes of action.

It is further ORDERED, ADJUDGED, and DECREED that plaintiffs pendent state law causes of action be DISMISSED WITHOUT PREJUDICE.

---

process clause in *Daniels.*" *Partridge,* 791 F.2d at 1187.

**24.** "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita,* 106 S.Ct. at 1356. *See also Celotex,* 106 S.Ct. at 2553–54.

**25.** Plaintiffs are suing for damages under the wrongful death statute, TEX.CIV.PRAC. & REM. CODE ANN. § 71.002 (Vernon 1986) (formerly Tex.Rev.Civ.Stat.Ann. art. 4671), the survival statute, TEX.CIV.PRAC. & REM.CODE ANN. § 71.021 (Vernon 1986) (formerly Tex.Rev.Civ. Stat.Ann. art. 5525), and the Texas Tort Claims Act, TEX.CIV.PRAC. & REM.CODE ANN. § 101.021 (Vernon 1986) (formerly Tex.Rev.Civ. Stat.Ann. art. 6252–19).

amined by physician so as to properly decide grievance issues and that union breached duty of fair representation by failing to make available deposition transcripts or live testimony of treating physicians was a "hybrid" action on an employment contract, subject to the six-month period of limitations in the National Labor Relations Act. National Labor Relations Act, § 10(b), as amended, 29 U.S.C.A. § 160(b); Labor Management Relations Act, 1947, § 301, 29 U.S.C.A. § 185.