544 A.2d 1060

Theresa A. Harding, Administratrix of the Estate of Scott W. Harding, deceased, on behalf of the Estate of Scott W. Harding, deceased, and Theresa A. Harding, Administratrix of the Estate of Scott W. Harding, deceased, on behalf of the next of kin of Scott W. Harding, deceased, Appellant *v*. Margaret Galyias, t/d/b/a D & G Bar and Municipality of Bethel Park, Appellees.

Donna L. Cooper, Administratrix of the Estate of Christopher L. Cooper, deceased, on behalf of the Estate of Christopher L. Cooper, deceased, and Donna L. Cooper, Administratrix of the Estate of Christopher L. Cooper, deceased, on behalf of the next of kin of Christopher L. Cooper, deceased, Appellant *v*. City of Pittsburgh, a municipal corporation, Appellee.

Argued March 23, 1988, before President Judge CRUMLISH, JR., and Judges CRAIG, MACPHAIL, COLINS, PALLADINO, MCGINLEY and SMITH.

*John E. Quinn, Evans, Rosen, Portnoy, Quinn & Donohue,* for appellants, Theresa A. Harding et al. and Donna L. Cooper et al.

*Robert W. Deer,* for appellee, Margaret Galyias, t/d/b/a D & G Bar.

*Thomas J. Madigan, Tighe, Evan & Ehrman,* for appellee, Municipality of Bethel Park.

*Robert B. Smith,* Assistant City Solicitor, with him, *D. R. Pellegrini,* City Solicitor, for appellee, City of Pittsburgh.

OPINION BY JUDGE PALLADINO, June 29, 1988:

These consolidated cases involve appeals from orders of the Allegheny County Court of Common Pleas in two separate cases involving Pennsylvania common law wrongful death and survivor actions (PA actions) and a federal cause of action pursuant to 42 U.S.C. §1983 (Section 1983 action).[1] Theresa A. Harding, Administratrix of the Estate of Scott W. Harding, appeals from an order granting the motion of the Municipality of Bethel

---

[1] Plaintiffs chose to bring the federal cause of action under 42 U.S.C. §1983 in state court.

Park (Municipality) for partial judgment on the pleadings and dismissing her PA actions against the Municipality (19 T.D. 1987). Donna L. Cooper, Administratrix of the Estate of Christopher L. Cooper, appeals from an order granting the motion of the City of Pittsburgh (City) for summary judgment (PA actions and Section 1983 action) (488 C.D. 1987). For the reasons which follow, we affirm both orders.

Scott W. Harding was arrested by the Municipality police, at approximately 6:50 P.M. on July 30, 1984, for driving under the influence of alcohol. He was taken to the Municipality's jail and placed in a cell. Shortly thereafter Scott Harding committed suicide by hanging himself from the bars of the cell with his bluejeans.

Christopher L. Cooper was arrested by the City police, at approximately 1:00 A.M. on February 13, 1983, for intoxication in a public place. He was taken to the City's Public Safety Building and placed in a cell. Shortly thereafter Christopher Cooper committed suicide by hanging himself from the bars of the cell with his bootlaces.

Theresa Harding and Donna Cooper (Appellants) filed PA actions and a Section 1983 action against the Municipality[2] and the City, respectively. Appellants' complaints contained the same allegations of wrongdoing.[3] In the PA actions it was alleged that the Municipality and the City were negligent "in maintaining and

---

[2] Harding also filed PA actions against Margaret Galyias, t/d/b/a D & G Bar, alleging that Scott Harding became intoxicated while a patron at D & G Bar. That aspect of the litigation is not involved in this appeal.

[3] Harding and Cooper were represented by the same counsel. Harding's action was instituted October 3, 1985; Cooper's action was instituted February 8, 1985. The cases proceeded independently prior to the appeals to this court. The cases were before different judges at the trial court level.

exercising care, custody or control of real property with a jail facility" in which intoxicated individuals would be incarcerated when they knew or should have known that "a high or increased incidence of jail suicides" would result because "a number of suicides and attempted suicides had previously occurred in the jail facility and/or in other similar facilities." The specific allegations of negligence were: (1) use of jail cells with only bars; (2) lack of proper surveillance such as cameras and better positioned desks; (3) lack of "cells that were non-isolated or otherwise visible to the jail guards or attendants on duty;" (4) lack of a "barless cell or room for non-violent arrests;" (5) maintenance of a jail facility "that was not fit or suitable for the safe detention of these individuals;" and (6) maintenance of a jail facility in which no alteration or modification of the traditional barred jail cells or the location of observations desks had been made. Harding complaint, paragraph 25; Cooper complaint, paragraph 13.[4]

Appellants made the following allegation with respect to their Section 1983 action:[5]

> On and [prior to the suicides] the [Municipality/City], acting under color of state law, authored, promulgated and implemented a policy, or, in

---

[4] Cooper's complaint contained an additional allegation that the City was negligent in failing to provide adequate supervision and patrol of intoxicated individuals.

[5] 42 U.S.C. §1983 states, in pertinent part:

**Civil action for deprivation of rights**—Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action of law, suit in equity, or other proper proceeding for redress. . . .

the alternative, by custom and practice, implemented a policy that had the effect of law whereby individuals arrested on charges of public intoxication and other non-violent, summary offenses would be taken to [a jail facility] for detention. The [Municipality's/City's] policy regarding the handling of the detention of these arrestees or pre-trial detainees included the following:

(a) The arrestee or pre-trial detainee would be placed in a traditional jail cell with bars; and/or

(b) The arrestee or pre-trial detainee would be placed in a cell in isolation; and/or

(c) No special screening was done of the arrestee or pre-trial detainee to determine if that individual represented a high risk of suicide while incarcerated; and/or

(d) No special surveillance or monitoring was performed or required of such an arrestee or pre-trial detainee; and/or

(e) No television cameras or other monitors were utilized to observe or watch such arrestees or pre-trial detainees; and/or

(f) The [Municipality/City] would fail to remove all items of personal adornment that may be used by the arrestee in a hanging.

Harding complaint, paragraph 34; Cooper complaint, paragraph 22. Appellants further alleged that:

The [Municipality/City] in implementing and maintaining the above policy or custom . . . acted in a callous and/or reckless manner that showed a deliberate indifference to the welfare, well being and lives of . . . [Appellants' decedents] so as to deprive [Appellants' decedents] . . . of the rights, privileges and liberties guaranteed under the Fourteenth Amendment of the Constitution of the United States of America,

and specifically Section '1' thereof, in that said Amendment provides for no deprivation of the life and liberty of any individual without due process of law.

Harding complaint, paragraph 36; Cooper complaint, paragraph 24.

Both the Municipality and the City, in their answer and new matter, asserted: (1) that they were immune to the PA actions pursuant to 42 Pa. C. S. §8541;[6] and (2) that Appellants had failed to state a cause of action upon which relief could be granted in the Section 1983 action. In reply, Appellants contended that their PA actions fell under the real estate exception to governmental immunity in 42 Pa. C. S. §8542(b)(3) and that a Section 1983 cause of action had been stated. Thereafter, the Municipality moved for partial judgment on the pleadings as to the PA actions on the basis that the actions did not fall within the exceptions to governmental immunity. The City moved for summary judgment on both actions. The City contended that, as a matter of law, it was immune to the PA actions and that no cause of action had been stated which would entitle relief in the Section 1983 action.

The trial court, on December 17, 1986, granted the Municipality's motion and dismissed Harding's PA actions against the Municipality with prejudice. The City's motion for summary judgment was granted on February 19, 1987 and docketed on March 2, 1987. Timely appeals from both orders were filed. Before us are two issues. The first is whether Appellants' PA actions against the Municipality and the City are barred by sov-

---

[6] The section states:

**Governmental immunity generally**

Except as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person.

ereign immunity. The second is whether Cooper's complaint states a Section 1983 action.

Initially, we note that a motion for judgment on the pleadings may only be granted where no facts are at issue and the law is such that a trial would be a fruitless exercise. *Singer v. School District of Philadelphia,* 99 Pa. Commonwealth Ct. 553, 513 A.2d 1108 (1986). A motion for summary judgment may properly be granted when the moving party has established that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. *Hall v. Acme Markets,* 110 Pa. Commonwealth Ct. 199, 532 A.2d 894 (1987). In considering both motions, all well-pleaded facts, but not conclusions of law, in the non-moving party's pleadings must be accepted as true. *Matthew-Landis Co., Inc. v. Housing Authority of Chester County,* 240 Pa. Superior Ct. 541, 361 A.2d 742 (1976). Summary judgment may be based on discovery materials and supporting affidavits as well as the pleadings. *See* Pa. R.C.P. No. 1035(a).

## I. PA ACTIONS

Appellants assert that their PA actions fall within the real estate exception to governmental immunity found at 42 Pa. C. S. §8542(b)(3). That subsection states, in pertinent part:

> (b) . **Acts which may impose liability.**—The following acts by a local agency or any of its employees may result in the imposition of liability on a local agency:
>
> . . .
>
> (3) *Real property.*—The care, custody or control of real property in the possession of the local agency, except that the local agency shall not be liable for damages on account of any injury sustained by a person intentionally trespassing on real property in the possession of the local agency. . . .

Appellants contend that their allegations, if proven, would establish negligence in the design and maintenance of the jail facilities used for detaining intoxicated arrestees. They cite *Singer; Lowman v. Indiana Area School District*, 96 Pa. Commonwealth Ct. 389, 507 A.2d 1270 (1986), and *Bersani v. School District of Philadelphia*, 310 Pa. Superior Ct. 1, 456 A.2d 151 (1982), as support for the proposition that the negligent design and maintenance of facilities, with respect to the function for which the real property is used, falls within the real property exception to governmental immunity.[7] While these cases do indicate that negligent design of a facility owned by a local agency might result in liability, that is not the only prerequisite which must be met to bring an action within the real property exception to govenmental immunity.

The Pennsylvania Supreme Court, in *Mascaro v. Youth Study Center*, 514 Pa. 351, 363, 523 A.2d 1118, 1124 (1987), held that:

---

[7] In *Singer*, this court held that the following allegation of negligence directly related to the condition of real property involved: "[T]he District negligently . . . '(f) failed to properly choose, construct, manage and control a landing surface for plaintiff's vault mentioned herein above.' " *Id*. at 555 n.4, 513 A.2d at 1109 n.4. In *Lowman*, this court remanded the case to permit the trial court to consider "the applicability of the real estate exception" in light of the allegation that defendant "was negligent with respect to the care, custody, or control of 'barriers, shields, nets, or other devices to protect the spectators' seating area.' " *Id*. at 395, 507 A.2d at 1273. The Superior Court, in *Bersani*, concluded that the defendant school district should have realized that a ballfield designed for pimpleball created an unreasonable risk of harm to young children playing softball on it, because of the crowded conditions around home plate, and reversed a grant of summary judgment on the basis that there was an issue of material fact as to whether defendant had breached the duty of care it owed plaintiff. The opinion contains no discussion of governmental immunity and no indication that it had even been asserted.

> [T]he real estate exception can be applied only to those cases where it is alleged that the artificial condition or defect of the land *itself* causes the injury, not merely when it facilitates the injury by the acts of others, whose acts are outside the statute's scope of liability. (Emphasis in original.)

The injury for which Appellants seek compensation in these cases is death. The act which resulted in death was suicide by hanging. Each act was committed by Scott Harding and Christopher Cooper themselves. The condition of the jail facilities may have made it easier for the hanging to be accomplished, but the condition of the jail facilities themselves did not cause the death of either Scott Harding or Christopher Cooper.

We conclude, as a matter of law, that the PA actions brought against the Municipality and the City do not fall within the real property exception to governmental immunity. Therefore, the Municipality and the City are protected from liability for damages in the PA actions by the governmental immunity provided in 42 Pa. C. S. §8541.[8]

---

[8] Another prerequisite to all actions claimed to fall under the eight exceptions to immunity in 42 Pa. C. S. §8542(b) is set forth in 42 Pa. C. S. §8542(a)(1) and requires that "[t]he damages would be recoverable under common law or a statute creating a cause of action if the injury were caused by a person not having available a defense under section 8541. . . ." Pennsylvania appellate courts have not addressed the issue of whether a municipality has a duty to exercise reasonable care, with respect to arrestees or pre-trial detainees, to prevent them from committing suicide. Because of our determination that any alleged negligence on the part of the Municipality and the City in its care, custody or control of real property, at most, only facilitated the act of suicide committed by Scott Harding and Christopher Cooper, we decline to address this issue.

## II. SECTION 1983 ACTION

In determining whether a Section 1983 action has been stated:

> [T]he initial inquiry must focus on whether the two essential elements to a §1983 action are present: (1) whether the conduct complained of was committed by a person acting under color of state law, and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States.

*Parratt v. Taylor,* 451 U.S. 527, 535 (1981).[9] A local government qualifies as a "person" who may be directly liable under 42 U.S.C. §1983. *Monell v. Department of Social Services,* 436 U.S. 658 (1978). The City, for purposes of its motion for summary judgment, admits that the conduct complained of was taken pursuant to state action. City's brief at 7. Therefore, we are concerned, in determining whether a Section 1983 action has been stated against the city, only with the second element: whether the conduct complained of deprived Christopher Cooper of "rights, privileges, or immunities secured by the Constitution or laws of the United States."

The United States Supreme Court in *Monell* held that "the touchstone of the §1983 action against a government body is an allegation that the official policy is responsible for a deprivation of rights protected by the *Constitution." Id.* at 690 (emphasis added). The Supreme Court elaborated on this, explaining:

> [A] local government may not be sued under §1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution

---

[9] *Parratt* was overruled in *Daniels v. Williams,* 474 U.S. 327 (1986), only to the extent it states that negligent action by a state official may deprive an individual of his fourteenth amendment due process rights.

of a government's policy or custom, whether made by its lawmakers or by those whose edicts, or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under §1983.

*Id.* at 694.

Cooper contends that Christopher Cooper was deprived "of the rights, privileges and liberties guaranteed under the Fourteenth Amendment of the Constitution of the United States of America, and specifically Section '1' thereof, in that said Amendment provides for no deprivation of the life and liberty of any individual without due process of law." Cooper complaint, paragraph 24. When individuals are placed in custody by the government, or under the care of government, they have a liberty interest protected by the due process clause of the fourteenth amendment in safe conditions of confinement. *Youngberg v. Romeo,* 457 U.S. 307 (1982). This interest arises out of a "special relationship" between the government and the individual created by virtue of the constraints imposed on private action by placing individuals into custody. *See Walker v. Rowe,* 791 F.2d 507, 511 (7th Cir.), *cert. denied,* 479 U.S. 994 (1986).

However, the Supreme Court has held that injury to life, liberty or property caused by negligent conduct does not constitute a deprivation within the meaning of the fourteenth amendment for purposes of a Section 1983 action. *Daniels v. Williams,* 474 U.S. 327 (1986). The Supreme Court explained its rationale for concluding that negligent conduct does not implicate the due process protections of the fourteenth amendment as follows:

Historically, this guarantee of due process has been applied to *deliberate* decisions of governmental officials to deprive a person of life, liberty, or property. . . . No decision of this Court

before Parratt supported the view that negligent conduct by a state official, even though causing injury, constitutes a deprivation under the Due Process Clause. This history reflects the traditional and common-sense notion that the Due Process Clause . . . was 'intended to secure the individual from the arbitrary exercise of the powers of govenment.' . . . By requiring the government to follow appropriate procedures when its agents decide to 'deprive any person of life, liberty, or property,' the Due Process Clause promotes fairness in such decisions. And by barring certain government actions regardless of the fairness of the procedures used to implement them . . . , it serves to prevent government power from being 'used for purposes of oppression.'

*Id.* at 331, (citations omitted, emphasis in original). The crucial point to keep in mind, when evaluating alleged wrongful conduct of a government to determine if it is more than negligence, is whether the conduct constitutes such deliberate indifference as to be an abuse of power. *See Davidson v. Cannon,* 474 U.S. 344 (1986).

In the case at bar, the trial court concluded that "[t]aken in its most favorable light the plaintiff's [Cooper's] position here sets forth no more than an assertion of negligence by the city." *Cooper v. City of Pittsburgh* (No. GD 85-2501, filed March 13, 1987), slip op. at 4. Cooper acknowledges that negligent conduct which results in the loss of life, liberty or property is insufficient to amount to a constitutional deprivation of the fourteenth amendment right to due process for purposes of a section 1983 action. Cooper asserts that the City's conduct, *i.e.* its alleged policy, was "callous, reckless and indifferent." The Supreme Court in *Daniels* declined to consider whether less than intentional conduct

"such as recklessness or 'gross negligence' is enough to trigger the protections of the Due Process Clause." *Id.* at 334 n.3.

The preceding discussion demonstrates that there are two components to the second element of a Section 1983 action when the constitutional deprivation alleged is the fourteenth amendment right to due process.[10] One is a life, liberty or property interest. The other is governmental conduct which, at a minimum, is more than negligent. Cooper has made the requisite allegations of (1) deprivation of life and liberty and (2) reckless conduct. However, these mere allegations are not sufficient to withstand a challenge that a Section 1983 action has not been stated. There must be facts alleged, which if proven, would establish that Christopher Cooper had a due process right to be protected from committing suicide and that the City's conduct, alleged to have caused Christopher Cooper to take his life, was more than negligent. *See Elliott v. Perez,* 751 F.2d 1472, 1479 n.20 (5th Circ. 1985).[11] We will address each component separately.

## A.  Requisite Interest

In *Colburn v. Upper Darby Township,* 838 F.2d 663 (3d Cir. 1988), the Third Circuit Court of Appeals considered the viability of a Section 1983 action brought by the administratrix of the estate of Melinda Lee Stierheim, who had committed suicide in the township

---

[10] Of course, there is also the requirement that the policy *cause* the constitutional deprivation. That requirement was not raised as an issue here.

[11] *Elliott* cites cases from almost every circuit which require this specificity for Section 1983 actions. The explanation for this requirement lies in the need to determine if there is a constitutional right which may have been deprived. Without the constitutional right, there can be no Section 1983 action against a government.

jail. The action against the township was based on an asserted deprivation of Stierheim's fourteenth amendment right to due process by the township's failure to provide adequate supervision and monitoring of its jail cells. The court noted that:

> [C]ustodial officials cannot be placed in the position of guaranteeing that inmates will not commit suicide. On the other hand, if such officials know or should have know [sic] of the *particular vulnerability to suicide* of an inmate, then the Fourteenth Amendment imposes on them an obligation not to act with reckless indifference to that vulnerability.

*Id.* at 669 (emphasis added). The court reversed the district court's dismissal of the action against the township, holding that the factual averment of prior suicides in the jail facility was a sufficiently specific factual allegation to support an allegation that Upper Darby Township knew or should have known there was inadequate monitoring of jail cells, thereby establishing a governmental policy. *Id.* at 671. The *Colburn* court, in its discussion of the sufficiency of the complaint as to the township, relied on the Fifth Circuit Court of Appeals decision in *Partridge v. Two Unknown Police Officers,* 791 F.2d 1182 (5th Cir. 1986). The *Colburn* opinion cannot be fully understood without reference to *Partridge.*

The Fifth Circuit, in *Partridge,* reversed a district court's dismissal of a Section 1983 complaint filed against the City of Houston by the parents of Michael Partridge, who had committed suicide in the city's jail. The plaintiffs in *Partridge* "alleged that the Houston Police Department had a custom of inadequate monitoring of *suicidal* detainees which amounted to a policy of denying them medical care" which was familiar to the city. *Id.* at 1188 (emphasis added). The court held that pretrial detainees have a fourteenth amendment due

process right to medical care and that "failure to take any steps to save a *suicidal* detainee from injuring himself may . . . constitute a due process violation. . . ." *Id.* at 1187 (emphasis added). Based on the factual allegations in the plaintiffs' complaint, the court determined that the plaintiffs had to be permitted to amend their allegation that the city was familiar with the Police Department's custom to an allegation that "the custom of inadequate care was persistent and widespread." *Id.* at 1189.

Crucial to the Fifth Circuit's determination that a constitutional deprivation had been alleged were the factual allegations supporting the contention that the police should have known that Michael Partridge was suicidal. These included allegations that: (1) Michael Partridge became hysterical while being questioned after his arrest; (2) his father, in response to a police sergeant's question, told the sergeant that Michael had suffered a nervous breakdown; (3) Michael wore two bracelets on his wrist, reading "Medical Warning-See Wallet Card" and "Heart Patient;" (4) on the way to the jail, Michael intentionally struck his head on the plexiglass separation between the front and back seat; and (5) Michael's clinical record within the jail, kept at the jail, showed a suicide attempt during a prior confinement. *Partridge,* 791 F.2d at 1184.

In *Colburn* there were also factual allegations from which it could be inferred that Stierheim was suicidal. These allegations were:

(1) that the Upper Darby police were familiar with Stierheim from previous encounters as a result of her relationship with members of the 'Warlocks' motorcycle gang; (2) that on the day before her suicide the Upper Darby police had been called to Stierheim's apartment after Stierheim had jumped from the window follow-

ing an argument with her boyfriend; (3) that Stierheim was extremely depressed for personal reasons; (4) that Stierheim had obvious scars on her right wrist from a previous suicide attempt; (5) that the detaining officer had to prevent Stierheim from swallowing three Valium pills she had removed from her purse; (6) that Stierheim was detained by the police 'for her own protection', and (7) that Miller [a police officer] found a live round of ammunition in Stierheim's pocket.

*Id.* at 670.

It is clear that in order to support an allegation of a deprivation of the fourteenth amendment right to due process when an arrestee has committed suicide, a complaint must contain factual allegations which, if proven, would establish that the police knew or should have known the arrestee was suicidal. This is so because while there is a "special relationship" between an arrestee and the government which gives the arrestee a due process right to safe confinement, the Supreme Court has held that confining an arrestee in a jail cell, "no matter how modern or antiquated", is not a violation of any constitutional right. *Bell v. Wolfish,* 441 U.S. 520, 537 (1979). The police must know that the arrestee has a particular need before it has a constitutional obligation to provide for it. *See Gagne v. City of Galveston,* 671 F. Supp. 1130 (S.D. Texas 1987).

In the instant case, Cooper has failed to make any factual allegations which would establish that Christopher Cooper had a need to be protected from himself. The only factual allegation in Cooper's complaint dealing with Christopher Cooper's condition is: "At the time of his arrest, the plaintiff's decedent was highly and visibly intoxicated, which fact was known, or should have been known, by the arresting officers of the City." Cooper

complaint, paragraph 11. Assuming this is true, it does not establish that Christopher Cooper was suicidal. Nor is it reasonable to infer suicidal tendencies solely from intoxication. Cooper has failed to plead facts which demonstrate a life or liberty interest protected by the fourteenth amendement.

## B. Conduct

The conduct alleged by Cooper to be callous, reckless and indifferent was the City's policy of "placing [arrestees and pretrial detainees] in traditional confinement in an ill-designed and outmoded jail facility." Appellants' brief at 26. An examination of paragraph 22 of Cooper's complaint shows that the City's alleged wrongful conduct, in addition to the use of an "ill-designed and outmoded" facility, was a lack of adequate monitoring. Cooper alleges this conduct was more than negligent because the City knew or should have known that policy subjected "individuals arrested for public intoxication and other non-violent summary offenses" to a high risk of suicide. Cooper complaint, paragraph 23. The alleged basis of this knowledge was the number of suicide attempts and successes in the years preceding 1983. *Id.*

The City cites *Patzig v. O'Neil,* 577 F.2d 841 (3d Cir. 1978), as support for the proposition that no constitutional deprivation has been stated by Cooper. In *Patzig,* the Third Circuit reviewed the propriety of a directed verdict for the City of Philadelphia in a Section 1983 action brought by the administrator of the estate of an arrestee who had committed suicide in the Philadelphia jail. The Third Circuit determined that "the evidence before the district court reveals that police personnel may have acted negligently, perhaps even callously; but such actions do not amount to the 'intentional conduct characterizing a constitutional infringement.' " *Id.* at

848 (quoting *Hampton v. Holmsburg Prison Officials,* 546 F.2d 1077, 1078 (3d Cir. 1976)). Unfortunately, the opinion in *Patzig* does not indicate what the wrongful conduct of the City of Philadelphia was alleged to be.

More useful is the decision of the Sixth Circuit Court of Appeals in *Molton v. City of Cleveland,* 839 F.2d 240 (6th Cir. 1988). *Molton* dealt with the liability of a local government under Section 1983 for the suicide of an arrestee. The court set aside a jury verdict against the City of Cleveland "because plaintiff introduced no evidence proving the City had a custom or policy which caused the officers to be deliberately indifferent to Molton's serious medical needs."[12] *Id.* at 243. A number of the allegations against the city closely resemble those made in the case before us. These include:

([1]) failure to install audio communication system between the cell block and the office area;

([2]) failure to modify cell architecture to render suicide less likely; and

([3]) failure to take corrective measures after eight prior suicides had occurred in the jail facility.

*Id.* at 246.

The court in *Molton* found significant the fact that the city had adopted a policy to attempt to deal with the problem of jail suicide. That policy did not include modification of the jail nor the installation of any type of surveillance equipment. The court determined that while the evidence showed the city may have negligently undertaken this policy, the fact that it had attempted to deal with the problem showed that there was no de-

---

[12] The evidence showed that Molton had been severely beaten by the police and that shouts from a prisoner in a neighboring cell while Molton was twice attempting suicide were ignored. When the police finally came to check, Molton was discovered hanging dead from the cell bars. *Molton,* 839 F.2d at 242.

liberate indifference to the suicide problem. *Id.* at 246-47.

During discovery, it was disclosed that the City's jail facility had, in the past, been the site of a number of suicide attempts and suicides. Discovery also disclosed a report, dated July 13, 1982, from the Chief of Police to the Mayor which established that the City was aware of the suicide problem. However, it also details changes *which were made* in police department policy to "limit or hopefully eliminate successful suicide attempts," and addresses other possible changes. The report even discusses why the police department concluded video monitoring would not be an effective deterrent.

These discovery documents refute Cooper's allegation that the City "acted in a callous manner that showed a deliberate indifference to the welfare, well being and lives of individuals."[13] It may have been negligent for the City to approach the problem in the manner it did, but the City was certainly not deliberately indifferent to the life and liberty interests of arrestees and pre-trial detainees confined in its jail facility. If the City had done nothing, in light of the large number of suicide attempts and actual suicides in the jail, deliberate indifference rising to the level of an abuse of power might reasonably be inferred. However, the fact that the changes taken by the City did not prevent Christopher Cooper's suicide does not demonstrate such an

---

[13] We note the alleged policy of the City includes a "failure to remove all items of personal adornment that may be used by the arrestee in a hanging," Cooper's complaint, paragraph 22(f), and that Cooper specifically alleged that Christopher Cooper's boot laces were not removed when he was jailed. Absent any factual allegations indicating suicidal tendencies, failure to remove "items of personal adornment" with which an arrestee might possibly kill himself can be considered, at most, no more than negligent conduct.

abuse of power. To hold otherwise would make the City strictly liable for any suicide in its facility. The trial court did not err in concluding that Cooper has set forth "no more than an assertion of negligence by the City."

We conclude that Cooper's complaint fails to allege facts which if proven would establish that Christopher Cooper was deprived of a constitutional right. Therefore, Cooper has failed, as a matter of law, to state a Section 1983 action.

Accordingly, the orders of the trial courts in these two cases are affirmed.

ORDER IN 19 T.D. 1987

AND NOW, June 29, 1988, the order of the Court of Common Pleas of Allegheny County in the above-captioned case, granting the motion of the Municipality of Bethel Park for partial judgment on the pleadings, is affirmed.

ORDER IN 488 C.D. 1987

AND NOW, June 29, 1988, the order of the Court of Common Pleas of Allegheny County in the above-captioned case, granting the motion of the City of Pittsburgh for summary judgment, is affirmed.