## Mitchell v. City of Philadelphia

*James J. DeMarco,* for plaintiff.
*John B. Day,* for defendant.

HILL, *J.,* June 26, 1990 — On the evening of July 23, 1982, William Healy, then 23 years of age and an experienced and capable swimmer, entered a large swimming pool located in Franklin Delano Roosevelt Park in Philadelphia, Pennsylvania. Sometime earlier Mr. Healy and two minor children who accompanied him had gained access to the pool through a hole in the fence surrounding the immediate pool and deck area. At approximately 8:30 p.m. Mr. Healy was found floating beneath the surface of the water. Rescue personnel were summoned and Mr. Healy was taken to a hospital, where he remained in a coma until his death on December 27, 1982.

Mr. Healy's estate, through its representative John Mitchell, sued the City of Philadelphia, which owned the park, alleging, inter alia, that the city was negligent in operating a defectively designed pool, improperly maintaining the fence and improperly supervising the pool. The trial was held on October

3, 4, 5, 6, 10, 11 and 12, 1989. On October 12, 1989, the court granted a directed verdict in favor of the city and against plaintiff having determined that the city was immune from liability under the Recreation Use of Land and Water Act of February 2, 1966, P.L. 1860 (1965), as amended, 68 P.S. §§477-1 to 477-8. In addition, the court noted that the Governmental Immunity Act, 42 Pa.C.S. §§8541-8542, was applicable. In his post-trial motion plaintiff contended that neither act is applicable.

## I

### Standard of Review

"A directed verdict may be granted only where the facts are clear and there is no room for doubt. . ." *Cooke v. Travelers Insurance Co.,* 350 Pa. Super. 467, 471, 504 A.2d 935, 936 (1986) (citations omitted); *Person v. C.R. Baxter Realty Co.,* 340 Pa. Super. 537, 540, 490 A.2d 910, 911 (1985). In ruling on a motion for directed verdict, "the trial court must consider the facts in the light most favorable to the party against whom the motion is made and must accept as true all evidence which supports that party's contention and must reject all adverse testimony. . ." *Cooke, supra,* at 471, 504 A.2d at 936 (citations omitted); *Bucchianeri v. Equitable Gas Co.,* 341 Pa. Super. 319, 328, 491 A.2d 835, 840 (1985); *Person, supra,* at 540, 490 A.2d at 911.

A review of the evidence indicates that the directed verdict was properly granted.

## II

### Plaintiff Did Not State a Viable Cause of Action

Before applying the relevant immunity statutes to the facts of this case, the court must consider whether plaintiff established a viable cause of action

under any of the three theories of negligence which he has advanced.

First, plaintiff contends that the city was negligent because the lifeguards on duty failed to properly supervise the pool. The three lifeguards testified that they went off duty at 7:30 p.m., and their time sheets, which were admitted into evidence, confirmed this. There was no testimony that this accident occurred prior to 7:30 p.m. or that the lifeguards were present when it happened. Accordingly, plaintiff's contention in this regard is without merit.

Secondly, plaintiff contends that there was a defect in the pool because it was too shallow to permit diving and that decedent drowned as a result of hitting his head on the bottom of the pool when he dove in. Plaintiff's expert witness, Richard Borkowski, testified that the pool was hazardous because the pool's deep section was in the middle of the pool which made the pool more difficult to supervise, but never testified that the pool was too shallow. Furthermore, there was no evidence that deceased struck his head in the pool as there were no marks, lacerations or bruises on deceased indicative of head trauma. Accordingly, plaintiff's contention in this regard is without merit.

Plaintiff's final contention pertains to the hole in the fence. Three lifeguards who were on duty on the day of the accident acknowledged that trespassers frequently cut holes in the fence surrounding the pool in order to gain access to it after it had closed. These lifeguards testified that all holes were repaired promptly once they had been discovered and that on the day of the accident there were no holes in the fence at the time their shift ended. However, a witness who testified on behalf of plaintiff maintained that holes were frequently left unrepaired,

and it is undisputed that the deceased entered the pool area through a hole in the fence.

Even if the hole was present at the end of the lifeguards' shift on the date of the accident, its presence was not the cause of the injuries sustained by decedent; this is true regardless of whether the deceased's legal status was that of trespasser, licensee or invitee. While the hole in the fence provided access to the pool, Mr. Healy's injuries were due to his action in immersing himself in the pool itself.

To begin with, plaintiff's case, while unfocused, is erroneously bottomed on the principle that the city owed a duty to guard against the likelihood that the deceased, a competent 23-year-old adult who was an experienced and capable swimmer, might gain access to its pool and injure himself therein. In short, plaintiff invokes an "attractive nuisance" type theory for in discussing the duties which an owner of a pool must observe he states in supplemental point for charge no. 24:[1] "This is because, as a matter of law, operating an unattended pool is a known danger to the public *who are not aware* of the hidden dangers of an unattended pool." (emphasis supplied)

Section 339 of the Restatement (Second) of Torts entitled "Artificial Conditions Highly Dangerous to Trespassing Children," is based on the "attractive nuisance" doctrine and was developed under the common law to protect children from their inability to appreciate dangers obvious to an adult. As noted in comment (b), the result of this rule "is a limited obligation to the *child,* falling short of a duty to prevent all foreseeable harm to him, but requiring reasonable care to those conditions against which

---

1.  Supplemental point for charge no. 24 was not included in the court's charge.

he may be expected to be unable to protect himself." (emphasis supplied) Comment (c) is also instructive for it states:

"(c) *Children.* In the great majority of the cases in which the rule here stated has been applied, the plaintiff has been a child of not more than 12 years of age. The earliest decisions as to the turntables all involved children of the age of mischief between six and 12. The later cases, however, have included a substantial number in which recovery has been permitted, under the rule stated, where the child is of high school age, ranging in a few instances as high as 16 or 17 years. The explanation no doubt lies in the fact that in our present hazardous civilization some types of dangers have become common, which an immature adolescent may reasonably not appreciate, although an adult may be expected to do so. The rule stated in this section is not limited to 'young' children, or to those 'of tender years,' so long as the child is still too young to appreciate the danger, as stated in Clause (c)."

Since the deceased was not a child but a competent adult who was also an experienced and capable swimmer, the theory of section 339 does not apply.

Similarly other sections of the Restatement (Second) of Torts expanding on the common law duties of a possessor of land to trespassers (sections 333-339) and licensees and invitees (sections 341, 341A, 342, 343, 343A) all include as an element of liability proof that the trespasser, licensee or invitee is unaware of the danger involved in his conduct. In this case it cannot be said that the deceased was unaware of the danger of entering into an unguarded pool.

Accordingly, plaintiff has not set forth a viable cause of action at common law.

## III

### The Governmental Immunity Act

Even if plaintiff has established a viable cause of action, his claim is barred by the Governmental Immunity Act, 42 Pa.C.S. §§8541-8542, under which local agencies are immune from liability unless the act complained of falls within one of the eight exceptions set forth in section 8542(b). Plaintiff asserts that the real estate exception, section 8542(b)(3), applies to the instant matter and immunity does not apply.

Section 8542(b)(3) provides in pertinent part:

"(b) *Acts which may impose liability* — The following acts by a local agency or any of its employees may result in the imposition of liability on a local agency:

"(3) *Real property* — The care, custody or control of real property in the possession of the local agency, except that the local agency shall not be liable for damages on account of any injury sustained by a person intentionally trespassing on real property in the possession of the local agency. . . ."

This section is inapplicable, however, because none of the three theories of negligence advanced by plaintiff invoke the application of the real estate exception.

Plaintiff's first contention is that there were lifeguards present when the accident occurred and that the city is liable for the negligent supervision of its employees provided. Assuming that the lifeguards were present, although there is no evidence to that effect, negligent supervision of real estate is not encompassed by the real estate exception. *Prescott v. Philadelphia Housing Authority,* 124 Pa. Commw. 124, 131, 555 A.2d 305, 309 (1989); *Houston v. Central Bucks School Authority,* 119 Pa. Commw. 48, 53-5, 546 A.2d 1286, 1289-90 (1988);

*McCloskey v. Abington School District,* 115 Pa. Commw. 289, 291-3, 539 A.2d 946, 947-8 (1988); *Wimbish v. School District of Penn Hills,* 59 Pa. Commw. 620, 626, 430 A.2d 710, 713 (1981). Accordingly, this contention is without merit.

Plaintiff's second contention is that the pool itself was defective in that it was too shallow to permit diving. As noted in section II of this opinion, the evidence presented to substantiate this allegation was insufficient. Accordingly, plaintiff's second contention is equally without merit.

Plaintiff's final contention is that the hole in the fence surrounding the pool constituted a defect in the real estate. This contention is without merit because "the real estate exception can be applied only to those cases where it is alleged that the artificial condition or defect of the land *itself* causes the injury, not merely when it facilitates the injury by acts of others, whose acts are outside the statute's scope of liability." *Mascaro v. Youth Study Center,* 514 Pa. 351, 363, 523 A.2d 1118, 1124 (1987). (emphasis in original)

In *Harding v. Galyias,* 117 Pa. Commw. 371, 544 A.2d 1060 (1988), appeal denied, 521 Pa. 625, 557 A.2d 727 (1989), two arrestees committed suicide by hanging themselves from their cell bars after having been jailed for offenses related to intoxication. Plaintiffs alleged that defendants were negligent in the design and maintenance of jail facilities used for detaining intoxicated arrestees, for instance, by having jail cells with only bars. The Commonwealth Court, relying on *Mascaro, supra,* stated:

"The injury for which appellants seek compensation in these cases is death. The act which resulted in death was suicide by hanging. Each act was committed by Scott Harding and Christopher Coo-

per themselves. The condition of the jail facilities may have made it easier for the hanging to be accomplished, but the condition of the jail facilities themselves did not cause the death of either Scott Harding or Christopher Cooper." 117 Pa. Commw. at 379-80, 544 A.2d at 1065.

While the hole in the fence provided the means of entry to the pool area it did not injure Mr. Healy in any way or lead to his death. Mr. Healy, a 23-year-old man, voluntarily entered the pool compound through the hole in the fence well before the accident. The cause of Mr. Healy's death was some occurrence within the pool, not the hole in the fence; there was no evidence that the actual swimming pool itself was defective. Furthermore, even if there was a viable cause of action, which is not the case, plaintiff's assertion that the deceased was an invitee and not a trespasser[2] is irrelevant to the application of the Governmental Immunity Act. As stated before, the hole in the fence does not constitute a defect under that act and did not cause the injury.

## IV

### The Recreation Act

The court partially based the directed verdict on the Recreation Act, but on reconsideration must conclude that under the circumstances this was erroneous.

The Recreation Act was enacted to encourage landowners to make land and water areas available to the public for recreational purposes by limiting their liability (68 P.S. §477-1). Under the Recreation Act the landowner who opens his or her land

2. Section 8542(b)(3) states that an intentional trespasser cannot take advantage of the real estate exception to immunity.

to the public "owes no duty of care to keep the premises safe for entry or use by others for recreational purposes, or to give any warning of a dangerous condition, use, structure, or activity on such premises to persons entering for such purposes." (68 P.S. §477-3.) Liability is imposed, however, where: (1) there is a "willful or malicious[3] failure to guard or warn against a dangerous condition, use, structure, or activity;" or (2) the landowner charges a fee to those who enter upon the land. (68 P.S. §477-6.)

While the other requirements necessary to confer immunity under the Recreation Act were fulfilled in this case, there is the possibility that the jury could have found that the failure of the lifeguards to repair the hole was "willful."

In granting the directed verdict the court relied on a line of federal cases in Pennsylvania which held that willfulness as used in the Recreation Act contained two elements: (1) actual knowledge of a danger and (2) that such danger is not obvious to those entering the premises. See *Livingston by Livingston v. Pennsylvania Power & Light Co.,* 609 F.Supp. 643, 649 (E.D. Pa. 1985) and *Capriotti v. Bunnell,* 685 F.Supp. 462, 466-7 (M.D. Pa. 1985). Further research initiated by the court following the trial has revealed that the Commonwealth Court of this state does not use the definition of willfulness adopted by the federal courts. Evidently the federal courts have adopted the duty owed to a licensee as the standard to be applied under the Recreation Act

---

3. Black's Law Dictionary, at 863 (5th ed. 1979) defines malicious in the following way:

"Characterized by, or involving, malice; having, or done with, wicked or mischievous intentions or motives; wrongful and done intentionally without just cause or excuse."

There is no evidence from which a jury could find a malicious failure to guard or warn with respect to any of plaintiff's theories of liability.

but the Commonwealth Court has not done so. Accordingly, whether defendant's conduct was willful must be reviewed in light of decisions by the Commonwealth Court.

In *Jones v. Cheltenham Township,* 117 Pa. Commw. 440, 444, 543 A.2d 1258, 1260 (1988), the Commonwealth Court, citing *Rosa v. United States,* 613 F.Supp. 469, 476 (M.D. Pa. 1985), interpreted willful to mean an act done voluntarily or intentionally or knowingly, as distinguished from accidentally.

As noted in section II, plaintiff advanced three theories of negligence on the part of the city. Plaintiff's contentions regarding the alleged lack of supervision of the pool and the allegation that the pool was not deep enough for diving in the area where the incident occurred do not articulate a willful failure to guard or warn. It is conceivable, however, that a jury could have found that there was a willful failure to repair the fence if they believed that the lifeguards had known of the hole in the fence at the end of their shift and had not repaired it. For this reason the court should not have granted the directed verdict on the basis of the Recreation Act.

While it may have been error to grant the directed verdict on the basis of the Recreation Act, the directed verdict was, nevertheless, proper for the reasons set forth in sections II and III of this opinion relating to plaintiff's failure to state a viable cause of action and the application of the Governmental Immunity Act.

## ORDER

And now, June 26, 1990, upon consideration of plaintiff's motion for a new trial, defendant's response thereto and following oral argument, it is

hereby ordered and decreed that the motion is denied and judgment is entered on the verdict.