## Freedman v. City of Allentown

*Richard N. Shapiro,* for plaintiff.

*Alan M. Black* and *Edward R. Eidelman,* for defendants.

McGINLEY, *J.,* March 19, 1991—The issue has been joined by the motion of defendant for summary judgment, raising governmental immunity. The issue before the court is whether plaintiff can evade the presumptive governmental immunity afforded defendants, either by showing a dangerous condition on city real estate or willful misconduct on the part of defendant police officers.

Summary judgment may only be granted where "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the party is entitled to judgment as a matter of law." Pa.R.C.P. 1035(b). The function of the court in deciding a summary judgment motion is to determine whether any genuine issue of fact exists. *Thorsen v. Iron and Glass Bank,* 328 Pa. Super. 135, 476 A.2d 928 (1984). In a motion for summary judgment the court views all the evidence in the light most favorable to the non-moving party. *Mattia v. Employers Mutual Companies,* 294 Pa. Super. 577, 440 A.2d 616 (1982).

The relevant facts in the present case are as follows: Plaintiff's decedent, Jerry Freedman, was

arrested by the Allentown Police on charges relating to prescription drug fraud. After being interviewed by the police, he was incarcerated in a holding cell at the Allentown Police Department headquarters. While in the cell, Mr. Freedman removed his shirt, tied one end of it around a ventilating grate in the ceiling, and the other around his neck, and hanged himself to death.

The Political Subdivision Tort Claims Act, 42 Pa.C.S. §8541 et seq., creates a general cloak of immunity for local governmental units. However, the real estate exception at section 8542(b)(3) permits a cause of action for injuries arising out of "the care, custody or control of real property in the possession of the local agency." Because section 8542(b)(3) is an exception to the general rule of governmental immunity, it should be strictly construed and narrowly interpreted. *Gallagher v. Bureau of Correction,* 118 Pa. Commw. 516, 545 A.2d 981 (1988); *Mascaro v. Youth Study Center,* 514 Pa. 351, 523 A.2d 1118 (1987); *Casey v. Geiger,* 346 Pa. Super. 279, 499 A.2d 606 (1985); *Vann v. Board of Education of the School District of Philadelphia,* 76 Pa. Commw. 604, 464 A.2d 684 (1983). Based on the circumstances of this case, there being no factual dispute, the issue of whether the ceiling ventilation grate falls within the real estate exception to the general rule of governmental immunity is a legal question to be decided by the court.

The case of *Mascaro v. Youth Study Center,* 514 Pa. 351, 523 A.2d 1118 (1987), is the seminal case in this area interpreting the real estate exception. The *Mascaro* case involved a juvenile detainee who escaped from a detention center and proceeded to burglarize and rape the occupants of a nearby Philadelphia home. Plaintiffs in *Mascaro* argued that the youth center failed to secure the locks, doors, and windows of the center so as to prevent the escape of

the juvenile. They contend that if the equipment had worked properly the juvenile would have been unable to escape and commit these crimes.

The court in *Mascaro* held that "the real estate exception can be applied only to those cases where it is alleged that the artificial condition or defect of the land itself causes the injury, not merely when it facilitates the injury by the acts of others, whose acts are outside the statute's scope of liability." *Id.* at 363, 523 A.2d 1124. Because it was not the locks on the detention center doors that committed the crimes, but rather the act of an independent third party, no liability was imposed because it did not fit into an exception under the governmental immunity rules.

The rule announced in *Mascaro* has been applied in many subsequent cases. In *McCloskey v. Abington School District,* 115 Pa. Commw. 289, 539 A.2d 946 (1988), the court applied the *Mascaro* test and found that the school district in the case was immune from liability under section 8541 et seq., despite plaintiffs' argument that the real estate exception applied. The facts of that case involved a youth who became a quadriplegic due to a fall from a set of gymnastic rings during a scheduled gym class. The court held that the injury was a result of the actions of the youth himself and not the artificial condition or defect of the land itself which caused the injury.

"Because . . . the injury to Mr. McCloskey was the result of his own action, we are therefore constrained to vacate our prior order and affirm the summary judgment order entered by the trial court." *Id.* at 293, 539 A.2d 948.

Additionally, the court in *Gallagher v. Bureau of Correction,* 118 Pa. Commw. 516, 545 A.2d 981 (1988), reinforces the proposition that if any type of third-party acts are involved in effectuating an in-

jury, the situation does not fall within the real estate exception to immunity. The *Gallagher* case involved an inmate who was injured when his cellmate closed the cell door on his fingers. The court found that the real estate exception did not apply because it was not the condition of the cell door *itself* that caused the injury, but rather the act of a third party in closing the door.

In the cases of *Harding v. Galvias* and *Cooper v. City of Pittsburgh,* 117 Pa. Commw. 371, 544 A.2d 1060 (1988), the court specifically addressed the situation of two separate individuals hanging themselves from the cell bars with pieces of their clothing while being detained. When deciding whether the City of Pittsburgh was exposed to liability through the real estate exception of section 8542(b)(3), the court reasoned:

"The injury for which appellants seek compensation in these cases is death. The act which resulted in death was suicide by hanging. Each act was committed by Scott Harding and Christopher Cooper themselves. The condition of the jail facilities may have made it easier for the hanging to be accomplished, but the condition of the jail facilities themselves did not cause the death of either Scott Harding or Christopher Cooper." *Id.* at 380, 544 A.2d 1065.

Applying the standard in *Mascaro v. Youth Center,* the court decided that as a matter of law, the real estate exception did not apply because the condition of the land itself did not cause the injuries.

Plaintiff in the instant case relies heavily upon the case of *Gump v. Chartiers-Houston School District,* 125 Pa. Commw. 596, 558 A.2d 589 (1989). The facts of that case involve a high school wrestler who was injured when he unintentionally put his hand through a window during the course of a wrestling practice. The injury occurred during a wrestling drill

which involved sprinting down certain hallways of the school. The student was unable to negotiate a turn in the hallway and as a result he put his hand through the windowpane of a hallway door and suffered multiple lacerations of the hand and arm.

The plaintiff in *Gump* argued that the above-stated facts were sufficient to place the cause of action within the real estate exception to the governmental immunity rule. Without discussing any of the prior case law, the court agreed that the real estate exception was applicable. The court focused on the fact that the injury occurred as a result of a "regular and permitted use of the hallway for wrestling-related activities." *Id.* at 602, 558 A.2d 592. The court also found that a dangerous condition was allowed to exist because the school district failed to install a shatterproof or reinforced window.

This court distinguishes the *Gump* case in many respects. The *Gump* court focused on the fact that the actions which caused the injury involved a regular and permitted use of the hallway. In the present case the act of plaintiff in hanging himself from the open ventilation grate was not a regular and permitted use of the grate. Secondly, the *Gump* case involved an accident. In the present case plaintiff's decedent, Jerry Freedman, intentionally hanged himself. For the above-stated reasons this court is not relying on the reasoning of the *Gump* case.

Based on the above-stated case law and the facts of the present case, the court finds that the real estate exception to governmental immunity does not apply. The condition of the ventilation grate itself did not cause any harm to Jerry Freedman. It was his intentional act of utilizing the grate for his suicide that caused the death to occur. Because of this independent action, this case does not fall within the real property exception.

We now turn to the issue of whether the acts of defendant policemen constituted willful misconduct under 42 Pa.C.S. §8550. Section 8550 of the Political Subdivision Tort Claims Act waives the immunity of an employee, who would otherwise be protected by governmental immunity, if the act is considered one of willful misconduct.

Plaintiff claims that Freedman had visible scarring on his wrist and neck. Plaintiff also alleges that the policemen involved in the arrest saw these scars, recognized them as suicide hesitation marks, and despite that recognition, proceeded to put him in the holding cell.

Plaintiff has not alleged that the police officers had the intent or awareness that Mr. Freedman would commit suicide while in the holding cell. The allegations in the complaint and the supporting exhibits focus on the fact that the police officers noticed the scars and did not take appropriate actions, not that they desired that Mr. Freedman commit suicide.

As stated in the case of *King v. Breach,* 115 Pa. Commw. 355, 540 A.2d 976 (1988):

"Willful misconduct, for the purposes of tort law, has been defined by our Supreme Court to mean conduct whereby the actor desired to bring about the result that followed or at least was aware that it was substantially certain to follow, so that such desire can be implied. *Evans v. Philadelphia Transportation Company,* 418 Pa. 567, 212 A.2d 440 (1965). In other words, the term 'willful misconduct' is synonymous with the term 'intentional tort.' See W. Prosser, Handbook of the Law of Torts, 31 (4th ed. 1971)." *Id.* at 366-67, 540 A.2d 981.

The court in *Williams v. City of Philadelphia,* 131 Pa. Commw. 71, 569 A.2d 419 (1990), applies this standard and distinguishes between "willful" and "wanton" misconduct. In *Williams,* the plaintiff's

decedent died as a result of the failure of emergency medical technicians to recognize a subdural hematoma injury. Attempts to revive the decedent, who had fallen down a flight of stairs, were unsuccessful. The EMTs concluded that this failure was due to a consumption of alcohol, and left the decedent in his unconscious state.

The trial court granted the motion for judgment on the pleadings which was upheld by the Commonwealth Court. The court reasoned that:

"As trained emergency technicians, the failure of Cole and Parker to take greater precautionary measures in light of the circumstances, exemplifies a reckless disregard of the existing danger; however, that behavior constitutes wanton, not willful, misconduct."

Applying this analysis to the case at bar, even if the Allentown defendants saw the scarring and recognized the scars as those of suicide hesitation marks, as alleged by plaintiff, this evidence is insufficient to support a conclusion that the policemen believed or knew that the suicide was substantially certain to follow, or that they intended the result of the suicide. It is important to note that there is a distinction between recognizing someone may have suicidal tendencies and desiring or actually being aware that a suicide will occur. At best, the facts adduced by plaintiff might support reckless disregard, but cannot support a finding of willful misconduct on the part of the policemen.

Additionally, we also consider that the motion of additional defendants Frank Kroboth and the Pennsylvania Board of Probation and Parole for summary judgment was granted because plaintiff had not alleged facts which would prove that either of those parties acted intentionally. *Freedman v. City of Allentown,* 128 Pa. Commw. 132, 562 A.2d 1012 (1989). Because the Commonwealth Court found

that both additional defendants were not guilty of willful misconduct when they had specific knowledge of plaintiff's suicidal tendencies and prior attempts, the court finds that based on the alleged facts, defendant police officers are not guilty of willful misconduct where they had no type of prior knowledge.

In viewing all the facts in the light most favorable to the non-moving party, we find that, as a matter of law, the acts of the Allentown defendants do not constitute willful misconduct.

## ORDER

Now, March 19, 1991, upon consideration of the defendants' motion for summary judgment and the briefs and arguments of both parties, and for the reasons stated in the attached opinion, it is ordered that defendants' motion for summary judgment is hereby granted, and that plaintiff's action is dismissed.