# Navolio v. Lawrence County

C.P. of Lawrence County, No. 10358 of 2010.

*Gianni Floro,* for plaintiff.
*Philip J. Sbrolla* and *Carolyn C. Batz,* for defendant

COX, *J.,* February 9, 2012—Before the court for disposition is the motion for summary judgment filed by the defendant Lawrence County, which argues that it is protected from liability in the current case by government immunity as stated in 42 Pa.C.S.A. § 8541, et seq.

The decedent, Matthew A. Hamilton, was arrested by the New Castle Police Department on a bench warrant and incarcerated at Lawrence County Corrections on September 13, 2006. At that time, the decedent was under the influence of alcohol, Roxycodone, Fentanyl and Xanax. He was placed in the HB Block of the facility and he received medical treatment from the defendant PrimeCare Medical, Inc. (hereinafter "PrimeCare") for detoxification from drug dependence. PrimeCare medicated the decedent by providing him with Vistaril and Bentyl, which had several possible side effects, such as dizziness, drowsiness, sleepiness, confusion, blurred vision, dry mouth, nausea or vomiting. He was also restricted to the bottom bunk of his

cell for ten days during his detoxification. On September 15, 2006, at approximately 8:30 p.m., PrimeCare administered the medications to the decedent, which required him to walk from his cell and down a flight of stairs to the central command area of the HB Block section of the jail. Several excerpts from the depositions of Lynn Sharp, a nurse employed by PrimeCare, were provided to this court. She testified it was common to mandate that inmates who were going through the detoxification process sleep on the bottom bunk, similar to the decedent, as they may have seizures or become dehydrated from a lack of food or water[1]. She stated that the decedent received his treatment and began walking to his cell. She also recalled that the decedent was having a difficult time "detoxing", but he ambulated without difficulty and was alert at the time he was there. It must be noted that he vomited twice between dinner and his encounter with Ms. Sharp. Captain Shawn Carna, an employee of Lawrence County Corrections, explained that the decedent reached the top of the stairs, took a few steps, turned around and walked back toward the stairs. Once he reached the stairs, the decedent grabbed the railing, turned around, leaned against the hand rail and fell backwards. He landed on the concrete floor feet first and tumbled backwards striking his head. Captain Carna insisted that the decedent "jumped" over the railing and the fall was not accidental. Conversely, the plaintiff presented the Mahoning County Coroner's Report, which indicated that Captain Carna informed Thomas Pappas, the investigator from the Mahoning County Coroner's Office,

---

1. Inmates going through the detoxification process often suffer from a lack of appetite and fail to consume adequate supplies of food and liquids.

that the decedent fell over the railing. The plaintiff has also supplied the opinion of Cyril H. Wecht, M.D., J.D., who stated that the decedent's death may have been attributed to the medications he received and the facility's failure to employ adequate safety measures for possible adverse drug reactions. It must be noted that the plaintiff has presented the court with a copy of the 2006 International Building Code, which mandates that a "guard" shall be constructed along the open sides of any mezzanine, which must create a protective barrier of not less than 42 inches measured vertically from the edge of the tread, adjacent walking surface or adjacent seatboard. In addition, handrails of a height not less than 34 inches nor more than 38 inches must be installed on stairways. The plaintiff alleges that the railings on the stairway in the current matter were only 32 inches high.

Upon suffering the injury, the decedent's detainer was lifted and he was transported to Jameson Memorial Hospital by paramedics. The decedent was then transported by STAT MedEvac helicopter to St. Elizabeth's Health Center where it was diagnosed that he suffered bilateral frontal hemorrhagic contusions, a right subdural hematoma, a right frontal subarachnoid hemorrhage, a midline shift to the left, fractures of the left temporal, occipital and parietal bones and a fracture of the right temporal. He remained in a comatose state until he died at 7:20 p.m. on September 25, 2006.

Based upon those facts, the plaintiff Brenda Navolio filed suit in United States District Court for the Western District of Pennsylvania against the defendants Lawrence County and PrimeCare arguing that the defendants

violated 42 U.S.C. 1983, et. seq., and they were negligent by failing to implement proper protocols for transporting inmates who were experiencing side effects from medical treatments and the railing in question was of inadequate height to properly protect the decedent from injury. On February 9, 2010, the Honorable Terrence F. McVerry granted summary judgment in favor of the defendants on all of the plaintiff's federal claims and declined to render a decision on the state law claims. The plaintiff then filed a Praecipe To Transfer Case Purusant To 42 Pa.C.S.A. § 5103 to transfer the negligence claim to state court on March 9, 2010, and filed a notice of appeal of Judge McVerry's rulings on March 19, 2010. The parties agreed to stay the state court proceedings until the outcome of the federal appeal was decided. On January 19, 2011, the Third Circuit Court of Appeals affirmed Judge McVerry's decision.

Now, Lawrence County has filed a motion for summary judgment claiming that the Political Subdivision Tort Claims Act, 42 Pa.C.S.A. § 8541, et seq., grants it immunity in the current matter and none of the eight enumerated exceptions to the same apply. More specifically, Lawrence County contends that the real property exception in 42 Pa.C.S.A. § 8542(b)(3) does not apply to situations in which an inmate is injured while incarcerated.

The purpose of the Summary Judgment Rule is to eliminate cases prior to trial where a party cannot make out a claim or defense after the relevant discovery has been completed. *Miller v. Sacred Heart Hospital*, 753 A.2d 829 (Pa. Super. 2000). The mission of the summary judgment procedure is to pierce the pleadings and to assess the proof

in order to see whether there is a genuine need for a trial. The summary judgment rule exists to dispense with a trial of the case or, in some matters, issues in a case, where a party lacks the beginnings of evidence to establish or contest a material issue. *Ertel v. Patriot-News Company,* 544 Pa. 93, 674 A.2d 1038 (1996). Any party may move for summary judgment in whole or in part as a matter of law whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report or if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury. Pa.R.C.P. No. 1035.2.

Summary judgment may be granted only in cases where it is clear and free from doubt that there is no genuine issue as to any material fact and that the moving party is entitled to a summary judgment as a matter of law. *Kafando v. Erie Ceramic Arts Co.,* 764 A.2d 59, 61 (Pa. Super. 2000) (citing *Rush v. Philadelphia Newspapers, Inc.,* 732 A.2d 648, 650-651 (Pa. Super. 1999)). The moving party bears the burden of proving the non-existence of any genuine issue of material fact. *Id.* A material fact, for summary judgment purposes, is one that directly affects the outcome of the case. *Gerrow v. Shincor Silicones, Inc.,* 756 A.2d 697 (Pa. Super. 2000). The non-moving party bears a clear duty to respond to a motion for summary judgment under Pa.R.C.P. No. 1035.3(a). The non-moving

party must adduce sufficient evidence on issues essential to his case on which he bears the burden of proof such that a jury could return a verdict in his favor. Failure to adduce this evidence establishes that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Ertel,* 544 Pa. 93, 674 A.2d 1038. The non-moving party must demonstrate that there is a genuine issue for trial and may not rest on averments in its pleadings. *DeSantis v. Frick Company,* 745 A.2d 624 (Pa. Super. 1999).

When determining whether to grant a motion for summary judgment, the court must view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. *Hughes v. Seven Springs Farm, Inc.,* 563 Pa. 501, 752 A.2d 339 (2000). Summary judgment is proper only when the uncontroverted allegations in the pleadings, depositions, answers to interrogatories, admissions of record, and submitted affidavits demonstrate that no genuine issue of material fact exists, and that the moving party is entitled to judgment as a matter of law. *P.J.S. v. Pennsylvania State Ethics Comm'n.,* 555 Pa. 149, 153, 723 A.2d 174,175 (1999). The trial court must confine its inquiry when confronted with a motion for summary judgment to questions of whether material factual disputes exist. *Township of Bensalem v. Moore,* 152 Pa. Cmwlth. 540, 620 A.2d 76 (1993). It is not the function of the court ruling on a motion for summary judgment to weigh evidence and to determine the truth of the matter. *Keenheel v. Pennsylvania Securities Commission,* 143 Pa. Cmwlth. 494, 579 A.2d

1358 (1990).

Pursuant to the Political Subdivision Tort Claims Act, local agencies will not be held liable for any damages for injuries to a person or property caused by any act of the local agency or its employee. 42 Pa.C.S.A. §8541. However, 42 Pa.C.S.A. §8542(b)(3) provides for an exception to that general rule for real property and is stated as follows:

(b) Acts which may impose liability. -- The following acts by a local agency or any of its employees may result in the imposition of liability on a local agency:

...

(3) Real property. -- The care, custody or control of real property in the possession of the local agency, except that the local agency shall not be liable for damages on account of any injury sustained by a person intentionally trespassing on the real property in the possession of the local agency. As used in this paragraph, "real property" shall not include:

(i) trees, traffic signs, lights and other traffic controls, street lights and street lighting systems;

(ii) facilities of steam, sewer, water, gas and electric systems owned by the local agency and located within rights-of-way;

(iii) streets; or

(iv) sidewalks.

The real property exception to government immunity includes articles of personal property affixed to the real

property in a manner so as to become realty itself, which are otherwise known as fixtures. *Davis v. Brennan*, 698 A.2d 1382,1383 (Pa. Cmwlth. 1997) (citing *Kelly v. Curwensville Area High School*, 141 Pa. Cmwlth. 449, 595 A.2d 787 (1991)). "Whether or not a chattel or article of personal property has become a fixture or realty necessarily involves factual considerations, i.e., the manner in which the chattel was physically attached or installed, the extent to which the chattel was physically attached or installed, the extent to which the chattel is essential to the permanent use of the building or other improvement, and the intent of the parties who attached or installed the chattel." *Id.*, 698 A.2d at 1384 (citing *Noll v. Harrisburg Areas YMCA*, 537 Pa. 274, 643 A.2d 81 (1994)). A chattel is deemed to be permanently attached when it is affixed by cement, plaster, nails, bolts or screws. *Id.* In *Mellon v. City of Pittsburgh Zoo*, 760 A.2d 921, 924 (Pa. Cmwlth. 2000), the court determined that a moving walkway which transports people up and down the hillside between the parking area and the main grounds of the Pittsburgh Zoo was included in the real property exception as it was permanently affixed to the real property. Conversely, a concert bleacher fails to invoke the real property exception to government immunity as there was no attachment of the bleacher to the real property on which it rested to classify it as a fixture. *Blocker v. City of Philadelphia*, 563 Pa. 559, 562-563, 763 A.2d 373, 375 (2000).

"The real property exception applies only to those cases where acts of the local agency or its employees make the property unsafe for the activities for which it is regularly used, for which it is intended to be used or for

which it may reasonably be foreseen to be used." *Moles v. Borough of Norristown*, 780 A.2d 787, 791 (Pa. Cmwlth. 2001) (citing *Mascaro v. Youth Study Center*, 514 Pa. 351, 523 A.2d 1118 (1987)). The real property exception may only be applied to cases where the harm was caused by the alleged artificial condition or defect of the land, not when that injury is facilitated by the acts of others. *Mascaro,* 514 Pa. at 363, 523 A.2d at 1124. "The real estate exception, however, has consistently been held to be unavailable to those whose claim of negligence consists of a failure to supervise the conduct of students or persons adequately." *Id.*, 514 Pa. at 362, 523 A.2d at 1124 (citations omitted).

Lawrence County cites to *Harding v. Galyias*, 117 Pa. Cmwlth. 371, 544 A.2d 1060 (1988), for the proposition that the real property exception does not apply to an alleged jail suicide committed by an inmate on municipal property. In that case, the decedents committed suicide shortly after being incarcerated in municipal jail by hanging themselves from the bars of the cell with their bootlaces. The appellants attempted to impose liability upon the city through the real property exception alleging that the city was negligent by maintaining jail cells with bars, lack of proper surveillance, lack of cells that were non-isolated or otherwise visible to jail guards and lack of barless cells or rooms for non-violent offenders.

The court explained, "While these cases do indicate that negligent design of a facility owned by a local agency might result in liability, that is not the only prerequisite which must be met to bring an action within the real property exception to governmental immunity." *Id.*, 117 Pa. Cmwlth. at 379, 544 A.2d at 1064. As such, the court

noted that the injury for which the appellants sought damages were deaths as the result of suicide by hanging, which was brought about by the actions of the decedents themselves. Although, the condition of the jail made it easier for them to hang themselves, the condition of the jail facilities did not cause the death of the decedents. *Id.*, 117 Pa. Cmwlth. at 380, 544 A.2d at 1065. For those reasons, the *Harding* court determined that the real property exception to government immunity did not apply. *Id.*

In the case sub judice, the plaintiff claims that the real property exception to government immunity applies to the current matter as the guard or railing on the stairway that was being traversed by the decedent was of insufficient height, which caused his accident. The decedent, Matthew A. Hamilton, was arrested by the New Castle Police on a bench warrant and was incarcerated in Lawrence County Corrections on September 13, 2006, while he was under the influence of alcohol, Roxycodone, Fentanyl and Xanax. He was placed in the HB Block of the facility and he received medical treatment from the defendant, PrimeCare, who provided him with Vistaril and Bentyl for detoxification from drug dependence. Those medications had several possible side effects, such as dizziness, drowsiness, sleepiness, confusion, blurred vision, dry mouth, nausea or vomiting. He was also restricted to the bottom bunk of his cell for ten days during his detoxification. On September 15, 2006, at approximately 8:30 p.m., the decedent walked from his cell on HB block down a flight of stairs to the central command area of the HB Block section of the jail to receive his medications. Lynn Sharp, the nurse for PrimeCare who administered the drugs to the

decedent, testified it was common to mandate that inmates who were going through the detoxification process sleep on the bottom bunk, similar to the decedent, as they may have seizures or become dehydrated from a lack of food or water. She explained that the defendant received his treatment and began walking to his cell. She also stated that the decedent was having a difficult time "detoxing," but he ambulated without difficulty and was alert at the time he was there. It must be noted that he vomited twice between dinner and his encounter with Ms. Sharp. Captain Shawn Carna testified that the decedent reached the top of the stairs, took a few steps, turned around and walked back toward the stairs. Once he reached the stairs, the decedent grabbed the railing, turned around, leaned against the hand rail and fell backwards. He landed on the concrete floor feet first and tumbled backwards striking his head. Captain Carna was insistent that the decedent jumped over the railing and the fall was not accidental. To rebut the contention that the decedent jumped, the plaintiff presented the Mahoning County Coroner's Report, which indicated Captain Carna informed Thomas Pappas, the investigator from the Mahoning County Coroner's Office, that the decedent leaned against the railing and fell backwards. There is no indication in that report that the decedent "jumped." Moreover, the plaintiff provided the court with the opinion of Cyril H. Wecht, M.D., J.D., who stated that the decedent's death could have been attributed to the medications he received and the facility's failure to employ adequate safety measures for possible adverse drug reactions. Upon suffering the injury, the decedent was diagnosed with bilateral frontal hemorrhagic contusions,

a right subdural hematoma, a right frontal subarachnoid hemorrhage, a midline shift to the left, fractures of the left temporal, occipital and parietal bones and a fracture of the right temporal. He remained in a comatose state until he died at 7:20 p.m. on September 25, 2006.

It appears that the plaintiff has provided the court with sufficient evidence to establish an issue of material fact regarding whether the decedent fell or jumped over the railing. The plaintiff also alleges that the railing in question was constructed 32 inches high in violation of the 2006 International Building Code. In support of that contention, the plaintiff has presented the court with a copy of the 2006 International Building Code, which mandates that a "guard" shall be constructed along the open sides of any mezzanine, which must create a protective barrier of not less than 42 inches measured vertically from the edge of the tread, adjacent walking surface or adjacent seatboard. In addition, handrails of a height not less than 34 inches nor more than 38 inches must be installed on stairways. According to the existing case law, the real property exception applies if the chattel in question is permanently affixed to the land and whether that chattel caused the harm suffered by the decedent. In this case, the plaintiff has presented facts, if believed to be true, set forth that the decedent climbed the stairs, reached the top, walked forward a couple of steps, retreated toward the stairs, leaned against the railing and fell over the side causing his fatal injuries. Moreover, the plaintiff contends that the railing, which she insists was constructed at a height of 32 inches, was not of sufficient height to meet the 2006 International Building Code. It is apparent that the stairs

in question are permanently affixed to the real property. Moreover, if the Mahoning County Coroner's Report and opinion of Dr. Wecht are viewed in a light most favorable to the plaintiff, there are sufficient circumstances to establish a question of material fact regarding whether the decedent jumped or fell over the railing. Unlike the *Harding* case, the plaintiff in this matter has provided facts to rebut the testimony that the decedent committed suicide by jumping over the ratling, In *Harding*, it was apparent the inmates committed suicide; however, in the current case, there is evidence that the decedent fell over the railing, which was erected at an inadequate height according to the 2006 International Building Code. Hence, the plaintiff has presented evidence to establish an issue of material fact regarding her contention that the railing was of insufficient height to adequately protect the decedent from injuring himself due to adverse reactions to Visatril and Bentyl, which were prescribed to alleviate the symptoms of the detoxification process. The plaintiff's cause of action regarding the height of the railing is permitted to proceed to trial.

Conversely, there is no exception that supports imposing liability upon Lawrence County regarding the lack of protocols for transporting inmates who were being treated with medications or for failing to monitor inmates who were being treated with medications. As a result, Lawrence County's motion for summary judgment must be granted regarding the plaintiff's negligence claims for the failure to properly supervise or protect the decedent, who was transported after being medicated.

For the reasons set forth in this opinion, Lawrence

County's motion for summary judgment is granted in part and denied in part. The motion is granted regarding the plaintiff's negligence claims for the failure to properly supervise or protect the decedent, who was transported after being medicated. However, the motion for summary judgment is denied regarding the plaintiff's cause of action regarding the inadequate height of the railing on the stairway.

## ORDER OF COURT

Now this February 9, 2012, this case being before the court on October 31, 2011, for oral argument on the motion for summary judgment filed by the defendant Lawrence County, with the plaintiff Brenda S. Navolio, individually and as administratrix of the estate of Matthew Adam Hamilton, deceased, appearing through counsel, Gianni Floro, Esquire and the defendant Lawrence County appearing through counsel, Carolyn C. Batz, Esquire and after consideration of the arguments and briefs presented and submitted by counsel and a complete and thorough review of the applicable record, the court enters the following order and it is hereby ordered, adjudged and decreed as follows:

1. In accordance with the attached opinion, the motion for summary judgment is hereby granted as to any claims by the plaintiff against the defendant Lawrence County as to negligence for failure to properly supervise or transport the deceased, Matthew A. Hamilton.

2. In accordance with the attached opinion, the motion for summary judgment regarding the inadequate height of the railing is denied. The Prothonotary is directed to

serve a copy of this order of court upon counsel of record, Gianni Floro, Esquire and Carolyn C. Batz, Esquire.